IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Laurence R. Warren,<br><br>  Plaintiff,<br><br>v.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>  Defendant.<br>_____ | C/A No. 0:10-1299-PJG<br><br><br><br>**ORDER** |

This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 DSC and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff, Laurence R. Warren ("Warren"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

In December 2005, Warren applied for DIB. Warren's application was denied initially and on reconsideration and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on March 6, 2008 at which Warren appeared and testified and was represented by W. League Boylston, Esquire. After hearing testimony from a vocational expert as well as testimony from Warren's wife, the ALJ issued a decision dated May 20, 2008 finding that Warren was not disabled. (Tr. 10-19.)

Warren was born in 1949 and was fifty-six years old on the alleged disability onset date. (Tr. 126.) He has a high school education, served in the United States Army and is a combat veteran of

the Vietnam War, and has past relevant work experience as a saw operator, a job he held for over thirty years. (Tr. 25-26, 96, 100.) Warren alleges disability since October 20, 2005 due to post-traumatic stress disorder ("PTSD"). (Tr. 95.)

The ALJ made the following findings and conclusions:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since October 20, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).
   * * *
3. The claimant has the following severe impairments: a post-traumatic stress disorder and depression (20 CFR 404.1520(c)).
   * * *
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
   * * *
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium[] work as defined in 20 CFR 404.1567(a) with no exposure to hazards in a low stress environment (defined as requiring no more than occasional decision-making and changes in work setting) with no exposure to the general public and no more than occasional exposure to co-workers/supervisors.
   * * *
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
   * * *
7. The claimant was born on [REDACTED], 1949 and was 56 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

Page 2 of 12



>national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).
>
> * * *
>
>11. The claimant has not been under a disability, as defined in the Social Security Act, from October 20, 2005 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 12-18.)

Warren filed a request for Appeals Council review which was denied on August 14, 2009, making the decision of the ALJ the final action of the Commissioner. (Tr. 5-8.) This action followed.

**SOCIAL SECURITY DISABILITY GENERALLY**

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

>(1) whether the claimant is engaged in substantial gainful activity;
>
>(2) whether the claimant has a "severe" impairment;
>
>(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;
>
>(4) whether the claimant can perform his past relevant work; and
>
>(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.



Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Warren raises the following issues for this judicial review:

1. Did the Appeals Council err in failing to follow the treating physician rule?

2. Did the Administrative Law Judge err in failing to properly evaluate plaintiff's complaints and credibility?

(Pl.'s Br., ECF No. 8.)

## DISCUSSION

### A. Treating Physician

Warren first argues that the ALJ erred in according the opinion of Warren's psychologist, Dr. Larry C. Hayes, minimal evidentiary weight. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2). "If [the Commissioner] finds that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Commissioner] will give it controlling weight." Id.; cf. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*) ("Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not *require* that the testimony be given controlling weight.") (emphasis added). If controlling weight is not accorded, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the

physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

The ALJ noted that the record contained an undated letter from Warren's psychologist, Larry C. Hayes, Ph.D., that stated that he had treated Warren at the Savannah Vet Center since November of 2005 for post-traumatic stress disorder with anxiety and depression. (Tr. 15-16, 374.) Additionally, Dr. Hayes opined that Warren's prognosis for improvement was poor and that although Warren managed his disorder by attending a support group, taking medication, and attending a specialized treatment program within the Veterans Administration, he did not see Warren as being beneficial to an employer and recommended disability. (Tr. 16, 374.) The ALJ accorded minimal evidentiary weight to this opinion as it was not supported by the evidence of record and noted specifically that Dr. Hayes's letter was undated. Additionally, the ALJ observed that the record contained no treatment or progress notes from Dr. Hayes or the Savannah Vet Center. (Tr. 16.) The ALJ noted that, instead, the record contained medical records from the Veterans Administration Medical Center ("VAMC") and Hampton Family Services showing that Warren had exhibited improvement in his condition with treatment. (Tr. 13, 16-17; see, e.g., Tr. 143, 159-60, 223-26, 356, 361, 362, 365.)

The ALJ is not required to give a treating physician's opinion controlling weight and may accord it less weight for a variety of reasons. Hunter, 993 F.2d at 35; Johnson, 434 F.3d at 654. In this case, the ALJ discussed in detail the medical evidence and testimony presented and provided explicit reasons for not accepting Dr. Hayes's opinion, instead concurring with portions of the

opinion of the state agency physicians. Warren argues that the records from VAMC are "insufficient to show that the opinion of Dr. Hayes is inconsistent with other medical records," but does not support this statement with any citations to the record. To the extent that Warren relies on a disability evaluation by the Department of Veterans Affairs, it is clear that the ALJ considered this evaluation and correctly observed that it was not binding. (Tr. 16); 20 CFR § 404.1504.

Warren also argues that he provided testimony indicating that he continues to have difficulties that prevent him from being able to return to work, specifically that his medications cause drowsiness and that he still is only able to sleep in small increments of time. However, as discussed further below, the ALJ found that Warren's testimony was not credible. Moreover, the ALJ specifically considered Warren's testimony as to his fatigue and side effects of his medication by limiting Warren to medium work activity, but noted that the record did not establish that Warren had consistently complained of either condition to any treating source. (Tr. 16.) While Warren may point to selective medical evidence in support of his arguments, the court finds that based on the evidence discussed above, Warren has failed to show that the ALJ's decision was not supported by substantial evidence. Accordingly, based on a review of the record, the parties' arguments, and the ALJ's decision, the court finds that Warren has failed to show that the ALJ's decision to reject the opinion of Dr. Hayes was not supported by substantial evidence or was controlled by an error of law. See 20 C.F.R. § 404.1527(d)(2) (permitting an ALJ to consider whether the medical opinion is "inconsistent with the other substantial evidence in your case record"); 20 C.F.R. § 404.1527(e) (stating that opinions that a claimant is "disabled" or "unable to work" are reserved to the Commissioner); Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); see also Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (finding that

an ALJ may weigh other factors brought to his or her attention that tend to support or contradict a treating physician's opinion) (quoting Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003)); Charles v. Barnhart, 375 F.3d 777, 783 (8th Cir. 2004) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements."); Stanley v. Barnhart, 116 Fed. Appx. 427, 429 (4th Cir. 2004) (unpublished) (disagreeing with the argument that the ALJ improperly gave more weight to residual functioning capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence).

**B.      Warren's Credibility**

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). In this matter only the second step is at issue,[1] during which the ALJ must expressly consider "the intensity and persistence of the claimant's pain [or other symptoms] and the extent to which it affects her ability to work." Id. In making this determination, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are

---

[1] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

    (i)    Your daily activities;
    (ii)    The location, duration, frequency, and intensity of your pain or other symptoms;
    (iii)    Precipitating and aggravating factors;
    (iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
    (v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
    (vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
    (vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

During the hearing, Warren testified that he had been employed at International Paper for over thirty years and that he stopped working in October 2005 following a confrontation with his supervisor. (Tr. 14, 25-26.) He testified that the incident brought back memories from his service in Vietnam when he had been passed over for promotions because of his race, causing him to become angry and anxious. (Tr. 14, 26-27.) Following the October 2005 incident, Warren was diagnosed with post-traumatic stress disorder and prescribed medications. (Tr. 14, 28-30.) Warren

testified that the prescribed medications helped his condition. (Tr. 14, 30.) Warren also testified that he still had difficulty sleeping for periods of time longer than four hours and feels tired all the time, but stated that prescribed medications had helped reduce the recurrent nightmares that he had been experiencing. (Tr. 14, 32-33.) He stated that he experienced fatigue as a result of his medications. (Tr. 14, 37.)

With regard to his daily activities, Warren reported that he spent most of his time at home. (Tr. 15, 33.) He stated that he watched television, but could not watch anything with violence as it disturbed him. (Tr. 15, 33-34.) He also testified that he did some volunteer work assisting the elderly and would occasionally take his mother to run errands. (Tr. 15, 34-35.)

In this case, the ALJ found that Warren's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." (Tr. 15.) In reaching this conclusion, the ALJ stated that "the record does not fully support [Warren's] allegations as to the degree of his social isolation," noting that Warren had reported to the VAMC in December of 2005 that he continued to attend church and in June 2007 that he had recently been on vacation with his wife. (Tr. 15, 223, 365.) The ALJ also discussed Warren's testimony, summarized above, that showed that Warren did volunteer work and occasionally ran errands with his mother. Additionally, the ALJ found that the record confirmed Warren's statement that his mental condition had improved with the use of prescription medications. (Tr. 15, 159-60, 223-26, 356, 361.) The ALJ also found it noteworthy that Warren, when treated at the Hampton Family Practice on February 21, 2006, reported that he was doing better, was still having difficulty controlling his anxiety, but wanted to try to return to work. (Tr. 15, 216.)

Warren argues that the ALJ erred in not considering Warren's testimony that he continues to "have difficulties that keep him from being able to work" and that this testimony is supported by medical records. (Pl.'s Br. at 3, ECF No. 8 at 3.) Warren specifically argues that his medications cause him to be sleepy and that his hypervigilance, while diminished, continues to prevent him from sleeping for long periods of time. (Id.) However, the ALJ expressly considered this testimony, as discussed above, by limiting Warren to the performance of medium work activity. (Tr. 16.) Additionally, the ALJ "provided for accommodation of [Warren's] mental impairments . . . by limiting him to unskilled work in a low stress environment . . . with no exposure to the general public and only occasional exposure to co-workers/supervisors." (Tr. 17.)

Warren also argues that the ALJ erred in assessing Warren's credibility by ignoring his long-term work history of over thirty years, stating that "it is not mentioned in the ALJ's decision." (Pl.'s Br. at 4, ECF No. 8 at 4.) However, when finding that Warren's testimony was not credible, the ALJ specifically found it "noteworthy" that Warren had worked at his job for over thirty years "apparently without evidence of work-related difficulties or reported interference from his combat experience in Vietnam." (Tr. 15.) Upon a thorough review of the record as a whole, the court finds that the ALJ did not err in conducting his analysis in determining the credibility of Warren's subjective complaints. See Craig, 76 F.3d at 595. To the extent that Warren may attempt to rely on selective medical evidence in the record in support of his argument, such evidence does not render the ALJ's decision unsupported. In determining that Warren's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible, the ALJ considered Warren's subjective complaints in conjunction with his abilities to perform daily activities, the medical evidence, and the other evidence of record. Accordingly, Warren has failed to demonstrate that the ALJ erred in finding that Warren's subjective complaints are inconsistent with the record. See Hines

v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"). Moreover, the court may not substitute its judgment for the ALJ's. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Based on the record as a whole, the court cannot say that the ALJ's determination as to Warren's credibility is not supported by substantial evidence.

## ORDER

Based upon the foregoing, the court finds that Warren has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. Therefore, it is hereby

**ORDERED** that the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 16, 2011
Columbia, South Carolina